Laura Each Nguyen, SBN 203141
Law Offices of Laura Each Nguyen, PC
2629 Townsgate Road, Suite 235
Westlake Village, CA  91361
Telephone:  (818) 665-4083
Facsimile:  (818) 206-3230

Attorneys for Plaintiff
AMERIFREIGHT, INC.

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERIFREIGHT, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>WESTCHESTER SURPLUS LINES INSURANCE COMPANY, a corporation; and DOES 1 THROUGH 50, inclusive,<br><br>Defendants. | Case No.: 2:14-CV-06937<br><br>**COMPLAINT FOR DAMAGES FOR:**<br>  1. **Breach of Contract, Count 1**<br>  2. **Breach of the Covenant of Good Faith and Fair Dealing, Count 1**<br>  3. **Breach of Contract, Count 2**<br>  4. **Breach of the Covenant of Good Faith and Fair Dealing, Count 2**<br><br>JURY DEMANDED |

   Plaintiff AMERIFREIGHT, INC.(hereinafter sometimes referred to as "PLAINTIFF" or "AMERIFREIGHT") hereby complains and alleges as follows:

### NATURE OF THE ACTION

   1.   PLAINTIFF brings this action against WESTCHESTER SURPLUS LINES INSURANCE COMPANY and DOES 1 THROUGH 50 (hereinafter collectively "DEFENDANTS") due to DEFENDANTS' wrongful and improper failure to properly adjust and pay AMERIFREIGHT'S claims of losses covered under a policy of insurance purchased by AMERIFREIGHT from WESTCHESTER SURPLUS LINES INSURANCE (hereinafter

"WESTCHESTER SURPLUS INSURANCE") for all direct losses caused by criminal activity of third parties. The claim at issue stems from actual damages due to two incidences of theft of personal property at AMERIFREIGHT's Elwood and Stimson facilities.

## VENUE AND JURISDICTION

2.   This is an action for damages for breach of contract and breach of the duty of good faith and fair dealing. This court has jurisdiction pursuant to 28 U.S.C. section 1332 (diversity) because the parties to the action are residents of differing states and the amount in controversy is in excess of $75,000. Venue is proper in the Central District of California pursuant to 28 U.S.C. section 1391(b). Jury is demanded by Plaintiff.

## PARTIES TO THE ACTION

3.   PLAINTIFF AMERIFREIGHT is a California corporation, doing business as Logistics Team, with its principal place of business in City of Industry, California.

4.   AMERIFREIGHT is informed and believes and on that basis alleges that WESTCHESTER SURPLUS is a corporation organized and existing under the laws of the State of Georgia, with its principal place of business in Fulton County, Georgia.

5.   PLAINTIFF is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 50, inclusive, and therefore sues those defendants by such fictitious names. PLAINTIFF will amend this complaint to allege their true names and capacities when ascertained. PLAINTIFF is informed and believes, and based thereon alleges, that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that PLAINTIFF's damages as herein alleged were proximately caused by said defendants.

## GENERAL ALLEGATIONS

6.   On or about September 2009, AMERIFREIGHT purchased from WESTCHESTER SURPLUS Policy No. IMC 121042109, a comprehensive portfolio of insurance which included coverage for both cargo claims and warehouse claims with policy limits of $200,000 for any one unit and $400,000 each occurrence per claim for warehouse theft, along with a $1,000 deductible and limits of $200,000 for any one unit and $400,000 each

occurrence per cargo claim along with a $5,000 deductible (hereinafter "the WESTCHESTER SURPLUS POLICY"). AMERIFREIGHT paid WESTCHESTER SURPLUS a premium of $37,359.00 for the WESTCHESTER SURPLUS POLICY. The policies of insurance were originally issued on October 17, 2010 and were renewed on October 17, 2011 and were active from October 17, 2010 through October 17, 2012.

7. On or about the September 26, 2011, AMERIFREIGHT discovered that a cargo trailer that had been delivered, but not yet unloaded had been stolen from AMERIFREIGHT's Elwood Yard. The unknown thieves stole $272,728.00 worth of electronics. AMERIFREIGHT contacted the police and filed a police report (hereinafter referred to as the "September Loss").

8. On or about November 3, 2011, AMERIFREIGHT reported the September Loss claim to its carrier Westchester Surplus Lines Insurance Company and a proof of loss showing a loss of $272,728.00 was provided.

9. On or about November 3, 2011, AMERIFREIGHT discovered that it had been the victim of a burglary of its Stimson warehouse. The unknown thieves stole $97,533.08 worth of electronics. Thereafter, AMERIFREIGHT reported the theft to the police and performed a diligent and reasonable investigation of the theft (hereafter referred to as the "November Warehouse Loss").

10. On or about November 4, 2011, AMERIFREIGHT reported the November Warehouse Loss claim to its carrier Westchester Surplus Lines Insurance Company and provided a proof of loss showing a loss of $97,533.08.

11. All premiums due under the WESTCHESTER SURPLUS POLICY have been fully paid on behalf of PLAINTIFF and PLAINTIFF has fully performed, or has been excused from performing, all terms and conditions required by the WESTCHESTER SURPLUS POLICY.

12. On December 2011, AMERIFREIGHT received notice that WESTCHESTER SURPLUS had received the tender of the claim and had assigned JP Heeger of Ace Insurance (hereinafter "ACE") as the adjustor on the file. AMERIFREIGHT is informed and believes that

ACE is a subsidiary of and/or otherwise affiliated with WESTCHESTER SURPLUS and that JP Heeger was, at all times mentioned herein, acting as an agent of WESTCHESTER SURPLUS in adjusting the claims for both the September and November Losses.

13. In December 2011, AMERIFREIGHT received an email from Mr. Heeger informing AMERIFREIGHT's risk manager that, on behalf of WESTCHESTER SURPLUS INSURANCE, he had received the documents in support of AMERIFREIGHT's proof of claim.

14. In early 2013, Mr. Heeger requested additional documents and on April 25, 2013, all documents requested by Mr. Heeger were provided.

15. In or about August 2013, AMERIFREIGHT's in house counsel, James Tran, contacted Mr. Heeger to determine why the claim had not been adjusted. On September 6, 2013, Mr. Heeger responded and indicated that he believed that there was less coverage because of a contractual provision despite the fact that the policy covered the reasonable value of all property.

16. On September 12, 2013, AMERIFREIGHT's counsel, James Tran responded to Mr. Heeger and advised him that he was incorrect and also requested a copy of the claim file.

17. Thereafter, Mr. Tran and Mr. Heeger spoke by telephone in order to clarify various issues. Following said conversation, Mr. Heeger requested additional documents. On October 16, 2013, the additional requested documents were provided.

18. On October 21, 2013, Mr. Tran attempted to follow up with Mr. Heeger via email. Mr. Heeger replied to Mr. Tran's email, indicating that he would address it the following day.

19. On October 23, 2013, Mr. Tran left a follow up email for Mr. Heeger as he had received no further communication.

20. On October 25, 2013, Mr. Heeger sent Mr. Tran an email indicating that due to other obligations he would not be able to address this issue for a week or so.

21. On November 5, 2013, Mr. Tran followed up with Mr. Heeger once again. On November 8, 2013, Mr. Heeger responded indicating that he would like to have a telephone call with AMERIFREIGHT before he issues his final opinion, but he made no arrangements for said telephone call.

22. On December 3, 2013, Mr. Tran attempted to follow up once again. Mr. Tran received no response to said communication.

23. On February 25, 2014, AMERIFREIGHT's risk manager, Mike Oliver contacts Mr. Heeger and once again, requested a position on the outstanding claims. In this correspondence, Mr. Oliver advised Mr. Heeger that AMERIFREIGHT would file suit if a satisfactory resolution could not be reached shortly.

24. On or about February 26, 2014, Mr. Heeger and Mr. Oliver had a telephone conversation and Mr. Heeger assured him that he would obtain a response to the claim shortly.

25. On July 17, 2014, Laura Each Nguyen, counsel for AMERIFREIGHT, contacted Mr. Heeger and demanded his final position. Mr. Heeger responded to this correspondence and requested further documentation. This documentation was provided on July 18, 2014. AMERIFREIGHT has received no further communication from Mr. Heeger or Westchester Surplus Insurance.

26. WESTCHESTER SURPLUS INSURANCE, by and through ACE, has engaged in a number of delay tactics and obstructive behaviors including, but not limited to, refusing to respond to communications, requesting information that is not relevant to the claim in order to justify delay and obstruction, failing to pay amounts due and payable, and causing AMERIFREIGHT damages as a result of WESTCHESTER SURPLUS INSURANCE's delay tactics and refusal to pay amounts owed for AMERIFREIGHT's claim for damages arising out of the September and November claims.

## **FIRST CAUSE OFACTION**

### **Breach of Contract**

### **(Count 1)**

### **Against All Defendants**

27. AMERIFREIGHT hereby incorporates paragraphs 1 through 26, inclusive, as though fully set forth herein.

28. In or about 2010, AMERIFREIGHT entered into a business relationship with Defendant WESTCHESTER SURPLUS INSURANCE for the provision of a policy of insurance.

29. In or about October 17, 2010, WESTCHESTER SURPLUS INSURANCE issued to AMERIFREIGHT a comprehensive portfolio of policies of insurance which covered both cargo and warehouse losses for the period of October 17, 2010 at 12:01 a.m. through October 17, 2011 at 12:00 a.m.

30. This WESTCHESTER SURPLUS POLICY bore policy number 121042109 001 A true and correct copy of the relevant portions of the WESTCHESTER SURPLUS POLICY is attached to the Complaint as Exhibit "A" and incorporated by reference.

31. Under the terms of the WESTCHESTER SURPLUS POLICY, AMERIFREIGHT was required to pay the policy premium and certain deductible amounts and, in return, WESTCHESTER SURPLUS INSURANCE was required to pay all covered claims made by AMERIFREIGHT or any other named insureds.

32. AMERIFREIGHT performed all conditions, covenants, promises, and obligations in accordance with the WESTCHESTER SURPLUS POLICY, including but not limited to paying all premium amounts and deductible amounts. If AMERIFREIGHT has not fully performed all conditions, covenants, promises, obligations, and requirements to be performed pursuant to policy number 121042109 001, AMERIFREIGHT'S performance was excused by WESTCHESTER SURPLUS INSURANCE's acts, omissions, or other action, including but not limited to WESTCHESTER SURPLUS INSURANCE's breach of contract, unclean hands, or waiver.

33. Under the terms of the WESTCHESTER SURPLUS POLICY, WESTCHESTER SURPLUS INSURANCE agreed to pay all covered and substantiated claims as they became due.

34. WESTCHESTER SURPLUS INSURANCE breached the terms of the WESTCHESTER SURPLUS POLICY by failing to properly investigate, acknowledge and pay the claim made for the September Loss. PLAINTIFF alleges that DEFENDANTS' purposeful

delay in adjusting the claim constituted a breach of the WESTCHESTER SURPLUSPOLICY and has caused substantial damage to PLAINTIFF.

35. As a proximate result of the said breaches by WESTCHESTER SURPLUS INSURANCE, AMERIFREIGHT has suffered damages in the amount of $272,728.00 plus interest thereon.

## SECOND CAUSE OF ACTION

## Breach of the Implied Covenant of Good Faith and Fair Dealing

## Against All Defendants

## (Count 1)

36. AMERIFREIGHT hereby incorporates paragraphs 1 through 34 inclusive as though fully set forth herein.

37. In every contract there is an implied covenant of good faith and fair dealing such that neither party may take any act, or omit to perform any act, that will deprive the other party of the benefits of the contract. DEFENDANTS have failed to act in good faith and to fairly deal in the following particulars:

   A.   DEFENDANTS have knowingly failed to acknowledge and act reasonably promptly upon communications with respect to the September Loss claim which was covered under the WESTCHESTER SURPLUS POLICY.

   B.   DEFENDANTS have failed to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies;

   C.   DEFENDANTS have failed to affirm or deny coverage of the September Loss claim within a reasonable time after proof of loss requirements have been completed and submitted by AMERIFREIGHT.

   D.   DEFENDANTS have not attempted in good faith to effectuate prompt, fair and equitable settlements of the September Loss claim despite the fact that liability has become clear;

   E. Defendant WESTCHESTER SURPLUS INSURANCE, by and through Mr. Heeger, has acknowledged verbally that the September Loss occurred and a covered loss was sustained.  However, in bad faith, DEFENDANTS have failed to timely and in good faith effectuate prompt, fair and equitable settlements of The September Loss.  Instead, WESTCHESTER SURPLUS INSURANCE has requested extraneous information and has failed to make any substantive communication with AMERIFREIGHT in more than six months.

   F. DEFENDANTS have not denied the claim, but have, in bad faith, simply refused to adjust the claim.

  38. PLAINTIFF is informed and believes and based thereon alleges that Defendant WESTCHESTER SURPLUS INSURANCE has acted unreasonably and without proper cause as it has failed to conduct a full, fair, and through investigation of all of the bases of the September Loss claim.

  39. PLAINTIFF is informed and believes and based thereon alleges that Defendant WESTCHESTER SURPLUS has acted unreasonably in that WESTCHESTER SURPLUS had a duty to diligently search for and consider evidence that supported coverage of the claimed loss and WESTCHESTER SURPLUS has failed to do so.

  40. PLAINTIFF further alleges that DEFENDANTS have failed to investigate PLAINTIFF'S claim in bad faith and have further failed to reasonably communicate with PLAINTIFF concerning the substance of the September Loss claim.  DEFENDANTS' conduct in failing to substantively respond to the claim and engaging in a series of delay tactics, without cause, was objectively unreasonable and constituted bad faith on the part of DEFENDANTS.

  41. DEFENDANTS had an obligation of good faith and fair dealing which encompassed qualities of decency and humanity inherent in its responsibilities.  In every insurance contract there is an implicit provision that neither party will do anything to injure the right of the other party to receive the full benefits of the contract.

42. AMERIFREIGHT is informed and believes, and based thereon alleges, that DEFENDANTS' wrongful and improper bad faith conduct was all undertaken fraudulently, maliciously, oppressively and in conscious disregard of AMERIFREIGHT's rights as a policyholder. By reason of the foregoing, AMERIFREIGHT is entitled to punitive damages from each defendant in an amount to be determined at the time of trial and in proportion to the wealth of that defendant.

43. As a result of WESTCHESTER SURPLUS INSURANCE's breach of the covenant of good faith and fair dealing regarding AMERIFREIGHT's claims and in order for AMERIFREIGHT to recover the benefits due to AMERIFREIGHT from WESTCHESTER SURPLUS INSURANCE under the WESTCHESTER SURPLUS POLICY, AMERIFREIGHT has been further damaged in that it has incurred attorneys' fees, expenses and costs and will incur additional attorneys' fees, experts' fees, expenses and costs to recover the benefits due from WESTCHESTER SURPLUS INSURANCE under the WESTCHESTER SURPLUS POLICY.

44. As a direct, legal and proximate result of the DEFENDANTS' conduct and false representations and their failure to pay AMERIFREIGHT for the insurance benefits due to AMERIFREIGHT, AMERIFREIGHT has been damaged in an amount in excess of $272,728.

### THIRD CAUSE OFACTION

### Breach of Contract

### (Count 2)

### Against All Defendants

45. AMERIFREIGHT hereby incorporates paragraphs 1 through 44, inclusive, as though fully set forth herein.

46. On or about October 17, 2010, AMERIFREIGHT entered into a business relationship with Defendant WESTCHESTER SURPLUS INSURANCE for the provision of a policy of insurance.

47. In or about October 17, 2011, WESTCHESTER SURPLUS INSURANCE issued to AMERIFREIGHT a comprehensive portfolio of policies of insurance which covered both cargo and warehouse losses for the period of October 17, 2011 at 12:01 a.m. through October 17, 2012 at 12:00 a.m.  These policies were a renewal of the prior year's policies.

48. This WESTCHESTER SURPLUS POLICY bore policy number 121042109 002 A true and correct copy of the relevant portions of the WESTCHESTER SURPLUS POLICY is attached to the Complaint as Exhibit "B" and incorporated by reference.

49. Under the terms of the WESTCHESTER SURPLUS POLICY, AMERIFREIGHT was required to pay the policy premium and certain deductible amounts and, in return, WESTCHESTER SURPLUS INSURANCE was required to pay all covered claims made by AMERIFREIGHT or any other named insureds.

50. AMERIFREIGHT performed all conditions, covenants, promises, and obligations in accordance with the WESTCHESTER SURPLUS POLICY, including but not limited to paying all premium amounts and deductible amounts.  If AMERIFREIGHT has not fully performed all conditions, covenants, promises, obligations, and requirements to be performed pursuant to policy number 121042109 002.  AMERIFREIGHT'S performance was excused by WESTCHESTER SURPLUS INSURANCE's acts, omissions, or other action, including but not limited to WESTCHESTER SURPLUS INSURANCE's breach of contract, unclean hands, or waiver.

51. Under the terms of the WESTCHESTER SURPLUS POLICY, WESTCHESTER SURPLUS INSURANCE agreed to pay all covered and substantiated claims as they became due.

52. WESTCHESTER SURPLUS INSURANCE breached the terms of the WESTCHESTER SURPLUS POLICY by failing to properly investigate, acknowledge and pay the claim made for the November Loss.  PLAINTIFF alleges that DEFENDANTS' purposeful delay in adjusting the claim constituted a breach of the WESTCHESTER SURPLUS POLICY and has caused substantial damage to PLAINTIFF.

53.     As a proximate result of the said breaches by WESTCHESTER SURPLUS INSURANCE, AMERIFREIGHT has suffered damages in the amount of $97,533.08 plus interest thereon.

## FOURTH CAUSE OF ACTION

### Breach of the Implied Covenant of Good Faith and Fair Dealing

### Against All Defendants

### (Count 2)

54.     AMERIFREIGHT hereby incorporates paragraphs 1 through 53 inclusive as though fully set forth herein.

55.     In every contract there is an implied covenant of good faith and fair dealing such that neither party may take any act, nor omit to perform any act, that will deprive the other party of the benefits of the contract.  DEFENDANTS have failed to act in good faith and to fairly deal in the following particulars:

    G.     DEFENDANTS have knowingly failed to acknowledge and act reasonably promptly upon communications with respect to the November Loss claim which was covered under the WESTCHESTER SURPLUS POLICY.

    H.     DEFENDANTS have failed to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies;

    I.     DEFENDANTS have failed to affirm or deny coverage of the November Loss claim within a reasonable time after proof of loss requirements have been completed and submitted by AMERIFREIGHT.

    J.     DEFENDANTS have not attempted in good faith to effectuate prompt, fair and equitable settlements of the November Loss claim despite the fact that liability has become clear;

    K.     Defendant WESTCHESTER SURPLUS INSURANCE, by and through Mr. Heeger, has acknowledged verbally that the November Loss occurred and a covered loss was sustained.  However, in bad faith, DEFENDANTS have failed to timely and in

good faith effectuate prompt, fair and equitable settlements of the November Loss. Instead, WESTCHESTER SURPLUS INSURANCE has requested extraneous information and has failed to make any substantive communication with AMERIFREIGHT in more than six months.

L. DEFENDANTS have not denied the claim, but have, in bad faith, simply refused to adjust the claim.

56. PLAINTIFF is informed and believes and based thereon alleges that Defendant WESTCHESTER SURPLUS INSURANCE has acted unreasonably and without proper cause as it has failed to conduct a full, fair, and through investigation of all of the bases of the claim.

57. PLAINTIFF is informed and believes and based thereon alleges that Defendant WESTCHESTER SURPLUS INSURANCE has acted unreasonably in that WESTCHESTER SURPLUS INSURANCE had a duty to diligently search for and consider evidence that supported coverage of the claimed loss and WESTCHESTER SURPLUS INSURANCE has failed to do so.

58. PLAINTIFF further alleges that DEFENDANTS have failed to investigate PLAINTIFF'S claim in bad faith and have further failed to reasonably communicate with PLAINTIFF concerning the substance of the November Loss claim. DEFENDANTS' conduct in failing to substantively respond to the claim and engaging in a series of delay tactics, without cause, was objectively unreasonable and constituted bad faith on the part of DEFENDANTS.

59. DEFENDANTS had an obligation of good faith and fair dealing which encompassed qualities of decency and humanity inherent in its responsibilities. In every insurance contract there is an implicit provision that neither party will do anything to injure the right of the other party to receive the full benefits of the contract.

60. AMERIFREIGHT is informed and believes, and based thereon alleges, that DEFENDANTS' wrongful and improper bad faith conduct was all undertaken fraudulently, maliciously, oppressively and in conscious disregard of AMERIFREIGHT's rights as a policyholder. By reason of the foregoing, AMERIFREIGHT is entitled to punitive damages

from each defendant in an amount to be determined at the time of trial and in proportion to the wealth of that defendant.

61.     As a result of WESTCHESTER SURPLUS INSURANCE's breach of the covenant of good faith and fair dealing regarding AMERIFREIGHT's claims and in order for AMERIFREIGHT to recover the benefits due to AMERIFREIGHT from WESTCHESTER SURPLUS INSURANCE under the WESTCHESTER SURPLUS POLICY, AMERIFREIGHT has been further damaged in that it has incurred attorneys' fees, expenses and costs and will incur additional attorneys' fees, experts' fees, expenses and costs to recover the benefits due from WESTCHESTER SURPLUS INSURANCE under the WESTCHESTER SURPLUS POLICY.

62.     As a direct, legal and proximate result of the DEFENDANTS' conduct and false representations and their failure to pay AMERIFREIGHT for the insurance benefits due to AMERIFREIGHT, AMERIFREIGHT has been damaged in an amount in excess of $97,533.08.

## PRAYER FOR RELIEF

**1. FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT**

    a.     For damages in the sum of $272,728.00 and more, according to proof.

    b.     For prejudgment interest on said sum at the maximum legal rate;

    c.     For costs of suit incurred by AMERIFREIGHT herein; and

    d.     For such other and further relief as this court may deem just and proper.

**2. SECOND CAUSE OF ACTION FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

    a.     For damages in the sum of $272,728 and more, according to proof.

    b.     For prejudgment interest on said sum at the maximum legal rate;

    c.     For reasonable attorneys' fees, experts' fees, expenses and other costs incurred by AMERIFREIGHT to recover the insurance benefits due to AMERIFREIGHT;

      d.    For punitive damages according to proof and in proportion to the wealth of each defendant;

      e.    For costs of suit incurred by AMERIFREIGHT herein; and

      f.    For such other and further relief as this court may deem just and proper.

**3.  THIRD CAUSE OF ACTION FOR BREACH OF CONTRACT**

      a.    For damages in the sum of $97,533.08 and more, according to proof.

      b.    For prejudgment interest on said sum at the maximum legal rate;

      c.    For costs of suit incurred by AMERIFREIGHT herein; and

      d.    For such other and further relief as this court may deem just and proper.

**4.  FOURTH CAUSE OF ACTION FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

      a.    For damages in the sum of $97,533.08 and more, according to proof.

      b.    For prejudgment interest on said sum at the maximum legal rate;

      c.    For reasonable attorneys' fees, experts' fees, expenses and other costs incurred by AMERIFREIGHT to recover the insurance benefits due to AMERIFREIGHT;

      d.    For punitive damages according to proof and in proportion to the wealth of each defendant;

      e.    For costs of suit incurred by AMERIFREIGHT herein; and

      f.    For such other and further relief as this court may deem just and proper.

Dated: September 5, 2014

/s/ Laura Nguyen

Laura Each Nguyen, Attorney for Plaintiff AMERIFREIGHT

# EXHIBIT A

# EXHIBIT B